UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>SHARON TWO CROW,<br><br>　　　　　　Defendant. | CR. 21-50056-JLV<br><br>ORDER |

## INTRODUCTION

Defendant, Sharon Two Crow, appearing *pro se*,[1] filed a motion for compassionate release. (Docket 58). Pursuant to Standing Order 23-02, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Ms. Two Crow's motion. (Docket 61). For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 23-02

Standing Order 23-02,[2] captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions

---

[1] In light of the Public Defender's Office intent to not represent Ms. Two Crow, she "respectfully request[s] to proceed pro se." (Docket 62).

[2] See https://www.sdd.uscourts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02").

under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)."  (SO 32-02).  Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act.  If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney."  Id. ¶ 1.

## FACTUAL BACKGROUND

Ms. Two Crow pled guilty to conspiracy to distribute a controlled substance.  (Docket 43).  On November 15, 2022, she was sentenced to 151 months imprisonment followed by five years of supervised release.  (Docket 56).  A presentence investigation report ("PSR") ordered by the court calculated Ms. Two Crow's advisory guideline range as 151 to 188 months of imprisonment based on a total offense level of 31 and her criminal history category IV.  (Docket 52 ¶ 86).  By statute a mandatory minimum sentence of ten years applied.  Id. ¶ 85.

Ms. Two Crow is an inmate at FCI Waseca, a low security federal correctional institution, located in Waseca, Minnesota.  See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.

jsp#inmate_results (last visited June 5, 2023). Ms. Two Crow has a scheduled release date of July 20, 2032. Id.

## MS. TWO CROW'S CLASSIFICATION

On March 21, 2023, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 60). They jointly agree this case should be categorized as a Low Priority case. Id.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the

burden to establish that compassionate release is warranted.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).  The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion.  United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t).  Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances.  Id.  Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons.  U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since December 2018 when FSA became law.[3]

---

[3] Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the Bureau of Prisons ("BOP") before the passage of the First Step Act.  It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Ms. Two Crow submitted a request for compassionate release to FCI Waseca's Warden on January 29, 2023.  (Docket 61 at p. 104).  She requested release due to her health conditions, namely asthma and "potential . . . cervical cancer," lack of rehabilitation available and her need to become the

primary caregiver for her mother and children. Id. The warden denied her request on February 21, 2023. Id. at p. 96. The warden cited the lack of information about the incapacitation of the caregiver of Ms. Two Crow's children or lack of other available caregivers. Id. The warden noted Ms. Two Crow's older children resided with her mother since they were young, and her younger child's father took custody of him because she tested positive for methamphetamine ["meth"] at his birth. Id. Ms. Two Crow exhausted her administrative remedies.

### B. Defendant's Motion for Compassionate Release

Ms. Two Crow filed the instant motion on March 3, 2023. (Docket 58). She requests compassionate release due to COVID-19, her "serious health condition, [her] initiative to seek rehabilitative treatment for [her] substance use issues during [her] incarceration, and [her] satisfactory behavior while incarcerated[.]" Id. at p. 2. She also seeks release "to become the primary caregiver for [her] 6 minor children and [her] disabled mother." Id. at p. 3. The court will address each claim separately.

First, Ms. Two Crow claims her medical conditions, specifically asthma, put her at risk during the COVID-19 Pandemic. Id. at p. 1.

Ms. Two Crow's medical records state she suffers from asthma, dental caries, abnormal uterine and vaginal bleeding, urinary incontinence, anemia and an unspecified mental disorder. (Docket 61 at p. 17). In January 2023, Ms. Two Crow reported it is " 'not painful but [she] feel[s] like [she] has

6

asthma.' Per pt ongoing for a couple of years. Laying on back at night or exercise seems to be an issue." Id. at p. 29. Her records list numerous times when she has seen medical personnel and received prescriptions. Id. at pp. 45-46, 60, 68, 72 & 77.

Ms. Two Crow was prescribed an Albuterol Inhaler[4] for her asthma. Id. at pp. 46 & 68. She was instructed to use the inhaler as needed to prevent or relieve an asthma attack, but she need not use it daily. Id. at p. 68. The court finds Ms. Two Crow's asthma to be a chronic condition, which she is receiving proper care for while incarcerated. "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Tyon, CR. 18-50115, 2022 WL 2953030, at *16 (D.S.D. July 26, 2022) (citing United States v. Ayon-Nunez, No. 1:16-CR-00130, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020)). Further, Ms. Two Crow's age and health conditions do not prevent her from providing self-care in a correctional facility setting. Although not unsympathetic, the court does not find Ms. Two Crow's medical condition to be an extraordinary or compelling reason for release.

The CDC lists asthma as a condition that could cause a person to become seriously ill if she contracts COVID-19. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.

---

[4]Ms. Two Crow submitted a two-page document examining Albuterol Inhalation Aerosol's use, side effects and general information. (Docket 59).

gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 24, 2023).  In considering COVID-19's possible effect on Ms. Two Crow due to her medical condition, the court must weigh the steps the BOP has undertaken to manage the spread of COVID-19 within the facilities and to treat inmates who become infected.  The BOP made significant changes to correctional operations since the pandemic started in early 2020.  See COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 12, 2023); see also www.bop.gov/coronavirus/ (BOP's "action plan" described in detail).  These include sanitary and safety measures, restrictions on movement and visitation restrictions and a vaccination program for inmates and staff.  Id.  Ms. Two Crow has a history of COVID and a history of COVID-19 vaccine administration.  (Docket 61 at pp. 7 & 65).

At FCI Waseca, 120 staff members and 969 inmates are fully vaccinated; there have not been any deaths due to COVID-19 by inmates or staff.  There are no inmates with COVID-19 and 320 inmates have recovered.  There are currently no staff with COVID-19 and 61 staff have recovered.  See COVID-19 Coronavirus, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited May 24, 2023).  This persuades the court that FCI Waseca has acted appropriately to treat inmates who do contract COVID-19.  The court believes the facility will continue to appropriately treat inmates who contract COVID-19.

The court believes Ms. Two Crow's medical conditions are appropriately managed at FCI Waseca, as the facility is engaged in appropriate efforts to

8

protect inmates against the spread of COVID-19 and the facility would act to treat any inmate who does contract COVID-19. Ms. Two Crow's health concerns are understandable, but her medical conditions coupled with the present conditions at FCI Waseca do not establish an extraordinary and compelling reason to justify compassionate release.

Second, Ms. Two Crow seeks compassionate release to be the primary caregiver for her six minor children[5] and her disabled mother, as there is no one else available. (Docket 58 at p. 3).

While not dispositive, family circumstances are a consideration contemplated by U.S.S.G. § 1B1.13, Application Note 1(C), which addresses compassionate release when "[t]he death or incapacitation of the caregiver of the defendant's minor child" has occurred or the defendant's spouse has become incapacitated and "the defendant would be the only available caregiver."[6] Ms. Two Crow's desire to care for her children and her mother does not satisfy either of these conditions. Ms. Two Crow's PSR details that she left her first born children, D.A. and A.A., when they were approximately 1 and 2 years old, with their father to move to Rapid City with a former

---

[5]Ms. Two Crow's PSR details her having five children: D.A., A.A., B.C., A.C. and S.H. (Docket 52 ¶¶ 66-67).

[6]Although the Sentencing Commission's policy statement found at U.S.S.G. § 1B1.13 is "not dispositive," the court may consider it in determining if extraordinary and compelling circumstances exist. United States v. Croud, Crim. No. 18-116, 2022 WL 17584413, at *2 (D. Minn. Dec. 12, 2022).

boyfriend. (Docket 52 ¶ 66). When S.H. was born, her youngest child, she tested positive for meth, so S.H.'s father took custody of him. Id. ¶ 67. She attempted to have a relationship with S.H., but he "does not really know her." Id. Prior to Ms. Two Crow's arrest, she and her boyfriend were spending a lot of time together, often using meth. Id. ¶ 69. Ms. Two Crow has been arrested twice tribally for first-degree child abuse, as well as for a charge of child endangerment that accompanied her second child abuse arrest. Id. ¶ 58.

Ms. Two Crow submitted a patient summary for Dixie Spotted Eagle, her mother, which stated Ms. Spotted Eagle suffers from acute hypoxemic respiratory failure, chronic obstructive pulmonary disease ("C0PD"), community acquired pneumonia ("CAP"), pericardial effusion, rheumatoid arthritis and atrial fibrillation. (Docket 58 at pp. 12-13). Ms. Spotted Eagle submitted a letter to the court stating her physical conditions made it difficult for her to care for herself and Ms. Two Crow's children. (Docket 64 at p. 1).

Although there is evidence that Ms. Spotted Eagle's health conditions make it difficult for her to care for Ms. Two Crow's children, it has not been established that there is no caregiver available for the children. Ms. Two Crow's PSR details other caregivers in her children's lives. (Docket 52 ¶¶ 66 & 68).

It has not been established there is no other available caregiver for the children; thus, compassionate release is not justified. See United States v. Nguyen, Criminal File No. 16-340, 2021 WL 4952838, at *1 (D. Minn. Oct. 25,

2021) (denying compassionate release in part because defendant did not show the allegedly incapacitated person was sole caregiver of his children); Carter v. United States, Criminal Action No. 00-0100, 2022 WL 17082369, at *17 (D. Md. Nov. 18, 2022) (citing United States v. Johnson, Crim. No. 13-00082, 2021 WL 3260847, at *4 (D.N.J. Jul. 29, 2021)) (holding that "in the absence of evidence that a prisoner is the sole available caregiver for his or her minor child or incapacitated spouse, district courts typically find that the inmate's family circumstances do not amount to an extraordinary and compelling reason within the meaning of 18 U.S.C. § 3582(c)(1)(A)").

Next, Ms. Two Crow seeks compassionate release due to her "initiative to seek rehabilitative treatment for [her] substance use issues while incarcerated and [her] satisfactory behavior while incarcerated[.]"  (Docket 58 at p. 2).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges."  United States v. Hodgin, No. 4:15-CR-40110-02, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (quoting United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020)).  The purpose of the FSA was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  See Concepcion v. United

11

States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").

Although the court is allowed to determine if a situation fits under the catch-all exception, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to justify compassionate release.  United States v. Brown, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) (quoting 28 U.S.C. § 994(t)).  "For the word 'alone' to do any work—as it must—that means courts can consider rehabilitation as part of a compassionate release motion."  Id.; see United States v. Contreras, 504 F. Supp. 3d 1052, 1060 (D.S.D. 2020) (The Sentencing Commission recognizes that rehabilitation cannot be the sole factor for compassionate release.).

The court applauds Ms. Two Crow for her positive behavior and change of mindset while incarcerated; however, the court does not find this to be an extraordinary and compelling reason which justifies compassionate release. The court already explained why compassionate release is not justified on Ms. Two Crow's other grounds, leading the sole remaining ground for release to be her rehabilitation.  Because rehabilitation alone cannot justify compassionate release, Ms. Two Crow's motion is denied.

### C. 3553(a) Factors

The 3553(a) sentencing factors further show that compassionate release is not warranted.  These factors include:

12

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

    a. to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

The nature and circumstances of Ms. Two Crow's offense is outlined in the PSR. (Docket 52 ¶¶ 5-25). Ms. Two Crow was engaged in a large meth distribution conspiracy and was known to be a reliable source of "good" meth in the Kyle community, selling to whomever wanted to buy. Id. ¶ 5. She was responsible for meth amounts exceeding 1.5 kilograms in the conspiracy. Id. She had individuals who sold the meth for her. Id. ¶ 7. On one occasion, she traded her vehicle to her suppliers in exchange for meth. Id. ¶ 12.

Ms. Two Crow has an extensive criminal history, consisting of possession of marijuana, failure to maintain financial responsibility, felony grand theft, simple assault and petty theft. Id. ¶¶ 42-50. The seriousness of Ms. Two Crow's crime, coupled with her criminal history, is sufficient to demonstrate the danger she presents and deny her release.

The court commends Ms. Two Crow for conducting herself in a positive manner while in BOP custody and encourages her to continue her behavior. She appears to be on the right path and sincerely devoted to learning from this time in custody.   (See Docket 61 at pp. 97-100).

Ms. Two Crow failed to establish that the § 3553(a) factors support relief. Ms. Two Crow was sentenced to 151 months imprisonment, which was the bottom of the advisory guidelines range.   This sentence is appropriate for the seriousness of the crime she committed.

## ORDER

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 58) is denied.

Dated July 12, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE